**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MARK T. WIMES,** | § | |
| **Petitioner** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-04-543** |
| | § | |
| **DOUG DRETKE, DIRECTOR,** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE–INSTITUTIONAL DIVISION,** | § | |
| **Respondent** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. The events about which he complains occurred at the Gurney Unit in Anderson County, Texas. Proceeding *pro se* and *in forma pauperis,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on October 21, 2004 (D.E. 1). Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) There was insufficient evidence on which to base a finding of guilt and (2) He was fighting in self defense. Respondent filed a motion for summary judgment on January 20, 2005 to which petitioner responded on March 21, 2005 (D.E. 14, 18).

## BACKGROUND

Petitioner currently is serving a 16-year sentence for burglary of a habitation (D.E. 1, p. 2). He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20040124690 petitioner was accused and found guilty of engaging in a fight without a weapon with offender Darryl Davis, by striking him in the face with a closed fist, although the blow did not result in any injuries (D.E. 15, p. 1).

In the offense report, the charging officer, Christopher Jackson, wrote that Wimes and Davis were engaged in a physical confrontation and that Wimes hit Davis with a closed fist. Also, while trying to acquire a mop to use as a weapon, Wimes struck inmate Billy Jones with a closed fist (D.E. 15, p. 5).

During the prehearing investigation and at the hearing, petitioner stated that he did not hit Davis, but that Davis became angry about a domino game and when petitioner went to his bunk, Davis hit him with a broom handle. Petitioner then tried to take a mop away from Jones and when Jones would not release the mop, petitioner hit Jones, but not Davis (D.E. 15, pp. 2-3).

Inmate Davis submitted a statement where he said that he, petitioner and two other inmates were playing dominoes when petitioner became angry after losing and began calling the other inmates names. Davis said petitioner approached him and pushed him and kept trying to antagonize Davis into fighting with him. Davis said he feared for his life and did "whatever he had to" to protect himself. He did not say that petitioner hit him with a closed fist (D.E. 15, p. 7).

Petitioner was found guilty based on the officer's report and testimony during the hearing (D.E. 15, p. 1). He was punished with loss of 30 days of commissary privileges, solitary confinement for 15 days and the loss of 180 days of good time. Petitioner submitted Step 1 and Step 2 grievance forms in a timely manner and they both were returned to him with a notation that there was sufficient evidence to establish his guilt (D.E. 15, disciplinary grievance records, pp. 1-4). Respondent concedes that petitioner exhausted his administrative remedies.

## APPLICABLE LAW

**A.  Standard of Review**

Petitioner argues that because respondent has filed a motion for summary judgment he is entitled to *de novo* review of the evidence and also to have contested issues of fact construed in his favor, citing in support <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Petitioner has correctly stated the standard for summary judgment.  But, in order for a prison disciplinary hearing in which good time credits are forfeited to comply with due process, the prison has to show only that there was some evidence in the record to support the findings.  <u>Superintendent v. Mass. Corr. Institution v. Hill</u>, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).  Consequently, when a district court reviews the findings of a prison disciplinary proceeding, it looks only to see whether there was some evidence to support the findings.  <u>Id.</u>, 472 U.S. at 455, 105 S.Ct. at 2774;  <u>Hudson v. Johnson</u>, 242 F.3d 534, 537 (5th Cir. 2001).

**B.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In <u>Sandin v. Conner</u>, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were  correctly established and applied in [<u>Wolff v. McDonnell</u>, 418 U.S. 539, 94  S.Ct. 2963 (1974)] and [<u>Meachum v. Fano</u>, 427 U.S. 215, 96  S.Ct. 2532 (1976)].  Following <u>Wolff</u>, we recognize that States may under certain circumstances create liberty interests which are protected by

3

the Due Process Clause.  But these interests will be generally limited to freedom from
restraint which, while not exceeding the sentence in such an unexpected manner as to give
rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical
and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary

segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant

deprivation in which a state might conceivably create a liberty interest."  Sandin, 515 U.S. at 486, 115 S.Ct. at

2301.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary

segregation did not differ significantly from conditions in administrative segregation and protective custody.

Id.

        Petitioner seeks reinstatement of his lost good time.  To the extent petitioner contends that the loss of

good time affects his parole eligibility he fails to state a basis of relief.  "In Texas, it is entirely speculative

whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole. . . . In

fact, we have expressly held that there is no constitutional expectancy of parole in Texas."  Madison v.

Parker, 104 F.3d 765, 768 (5ᵗʰ Cir. 1997).  Without such an expectation, petitioner is not entitled to due

process following the loss of good time credits insofar as the loss affects his eligibility for parole.

        In addition to the parole scheme in Texas, some inmates are entitled to early release under a

mandatory supervision program in which a prisoner sentenced to the institutional division can serve the

remainder of his term outside the prison, not on parole, but under the supervision and control of the

pardons and paroles division.  Id., 104 F.3d at 768 (citing Tex. Code Crim. P. Ann. art. 42.18 §

2(2)).  Prisoners earn good time credits which are added to their actual days served in prison to calculate their

release date.  Tex. Gov't Code Ann. §508.147 (Vernon 2002).

        The Fifth Circuit has determined that prior to September 1, 1996, the mandatory

supervision program created a constitutional expectation of early release.  Malchi v. Thaler, 211

4

F.3d 953, 957-958 (5th Cir. 2000).  The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest.  Hudson, 242 F.3d at 536, n. 1.  However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does.  Id. at 536.  Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision.  Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Petitioner in this case is eligible for release to mandatory supervision (D.E. 14, Ex. A, Commitment Inquiry).  Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  The inmate is entitled to the following process:  (1) He must receive written notice of the charges;  (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;  (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.  Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

In this case, petitioner received written notice of the charges, was given the opportunity to present witness statements and the hearing officer provided a written statement about the evidence upon which he relied to find petitioner guilty.  Petitioner argues that there was insufficient evidence to support a finding of guilt because the charging officer stated at the hearing that he did not see petitioner hit Davis.  While this is true, the officer did testify that Davis told him that petitioner hit him and also that petitioner admitted to him at the time that he hit Davis and Jones (D.E. 15, p. 2 and hearing tape).

As discussed above, it is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some

facts or any evidence at all.  Hudson, 242 F.3d at 537.  The charging officer's testimony that Davis told him

that petitioner hit him and also that petitioner said he hit him is "some evidence" of petitioner's guilt.

Moreover, petitioner admitted at the hearing and in his pleadings in this case that he hit Jones in the mouth in

an attempt to get the mop away from him.  That testimony supports a finding that he was fighting without a

weapon, even if he hit only Jones and not Davis.  Petitioner's argument that the decision of the hearing

officer was not supported by sufficient evidence is without merit.

## C.  Certificate of Appealability

The Supreme Court has stated that the showing necessary for a Certificate of Appealability

("COA") is a substantial showing of the denial of a constitutional right.  Hernandez v. Johnson,

231 F.3d 243, 248 (5th Cir. 2000)(citing Slack v. McDaniel, 529 U.S. 473, 483-484 (2000)).

Under that standard, an applicant makes a substantial showing when he demonstrates that his

application involves issues that are debatable among jurists of reason, that another court could

resolve the issues differently, or that the issues are suitable enough to deserve encouragement to

proceed further.  See Clark v. Johnson, 202 F.3d 760, 763 (5th Cir. 2000).  Specifically, where a

district court has rejected a prisoner's constitutional claims on the merits, the applicant must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong.  Slack, 529 U.S. at 484.  A determination of the merits of a claim

should not be part of the decision to issue a COA.  Rather, it is the debatability of the underlying

constitutional claim, rather than its resolution, that controls whether a COA should issue.  Miller-

El v. Cockrell, 537 U.S. 332, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If the district court orders that petitioner's cause of action be dismissed, and petitioner

seeks a COA in order to proceed with his case, it is further recommended that the COA be denied

because he has not made the necessary showing for issuance.

**RECOMMENDATION**

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 14) be GRANTED  be granted and petitioner's cause of action for habeas corpus relief be DISMISSED.  It is further recommended that should petitioner seek a Certificate of Appealability, that it be DENIED.

Respectfully submitted  this 4th day of May, 2005.


B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).